[No. 34716. *En Banc.* May 28, 1959.]

MARGARET JEAN SCHUDDAKOPF, *Appellant,* v. TACOMA SCHOOL DISTRICT No. 10, *Respondent.*[1]

[1]Reported in 339 P. (2d) 694.

*MacDonald, Hoague & Bayless* (*Kenneth A. MacDonald*, of counsel), for appellant.

*John G. McCutcheon* and *Keith D. McGoffin*, for respondent.

PER CURIAM.—This is an action for wages which plaintiff contends are due under a contract of employment.

On April 9, 1954, plaintiff and defendant entered into a contract of employment whereby defendant agreed to employ plaintiff as an elementary school counselor during the school year 1954-1955. During June 1954, plaintiff appeared in Seattle before the committee on un-American activities of the House of Representatives of the 83rd Congress of the United States. She refused to answer certain questions bearing upon her membership in the communist party and invoked the privilege against self incrimination of the fifth amendment to the United States Constitution. On July 9, 1954, defendant conducted an employer-employee conference with plaintiff, and, on July 21, 1954, announced that it would take no action with reference to plaintiff's contract. This meant that defendant was ready to employ the plaintiff as it had agreed to do in the contract.

On August 31, 1954, the Pierce county superintendent of public schools, purportedly acting under the provisions of RCW 28.19.060, suspended appellant from teaching in the public schools of Pierce county. Prior thereto, two members of defendant school board had filed affidavits with the county superintendent. These stated that plaintiff, by refusing to answer questions before the Congressional committee, had brought public criticism and disrepute upon herself and her employers. Apparently, the reasons for plaintiff's suspension were substantially the same as those set forth in the affidavits filed by the members of the school board.

The trial court found that this action by the Pierce county superintendent was an original action; that the defendant was not a party to the suspension and took no part in it at any stage. This finding is supported by the record. While it is true that two members of the defendant school board filed affidavits urging that plaintiff be suspended; nevertheless, they acted in their individual capacities. The school board had already voted to comply with its contract to employ the services of plaintiff as a school teacher.

After plaintiff was suspended, she appealed to the state superintendent of public instruction. For reasons not apparent in the record, no action on this appeal was taken until December 22, 1955. Obviously, this was after the expiration of the 1954-1955 school year. On that date, the state superintendent reversed the action of the county superintendent and held that the suspension was improper.

Plaintiff instituted this action for wages. The trial court granted summary judgment to the defendant. Plaintiff appeals.

■■ We are in accord with the reasoning of the trial court as set out in its memorandum opinion:

"It appears to me that the plaintiff herself was unable to perform her contract through no fault of the defendant School District because on the date when the contract was to begin, she had no right to teach in Pierce County. Lacking that right she was unable to tender performance.

"The facts of this case are squarely within the application of Section 274 of the *Restatement of Contracts*, which reads as follows:

" '(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge.

" '(2) The rule of sub-section (1) is applicable though the failure of performance is not a violation of a legal duty.'

"The comments under this section make the reason for the rule abundantly clear, and the comment to sub-section (2) is particularly pertinent in this case. It is as follows:

" 'The law excuses a contracting party from performing his promise for a variety of reasons—infancy, insanity, im-

possibility caused in certain ways; but *however blameless in law or in fact a party to a contract may be in failing to perform his promise, if he does fail he should not have what is promised in exchange for his performance.*'

"I know of no principle which excepts teachers' contracts from this general rule of contract law.

"So in this case though the plaintiff may have been blameless in law and in fact for her inability to tender performance on September 7, and for more than a year thereafter, nevertheless she did fail and no reason exists for requiring the defendant to pay for that which it did not receive.

"It is not suggested in the plaintiff's complaint, or elsewhere, that the School District inspired, caused, or in any wise contributed to the action of the County Superintendent, or that it is in any other way responsible for the action of the County Superintendent." (Italics ours.)

The appellant urges that, under the circumstances of this case—where neither party is at fault, it would be better public policy to require the school district to bear the loss. Appellant cites cases from other jurisdictions holding that if schools are closed down for reasons of public health or fire, teachers are still entitled to be paid their salaries. We are convinced that these cases are not apposite. In the instant case, because of a personal disability, the appellant was unable to teach during the 1954-1955 school year. In the "school closure" cases teachers were unable to teach because there were no schools available.

It is regrettable that the state superintendent of public instruction rendered no decision in this matter until over a year after appellant appealed from the decision of the county superintendent. However, respondent was not responsible for this delay. The simple fact is that, during the school year 1954-1955, appellant was incapable of performing her contract of employment. As a consequence, she is not entitled to recover wages under that contract.

For the foregoing reasons, the judgment of the trial court should be affirmed. It is so ordered.